838 F.2d 59
 Bankr. L. Rep. P 72,189, 9 Employee Benefits Ca 1497
In re CHATEAUGAY CORPORATION, Reomar, Inc., the LTV
Corporation, et al., Debtors,
The LTV CORPORATION, et al., Plaintiffs-Appellants, Cross-Appellees,
v.
George FARRAGHER, et al., Defendants-Appellees, Cross-Appellants,
The Pension Benefit Guaranty Corporation and the United
Steelworkers of America, Appellees,
David H. Miller and William W. Shaffer, Defendants-Appellees.
 Nos. 388, 432, Dockets 87-5036, 87-5040.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 7, 1987.
Decided Jan. 27, 1988.
 
 Karen E. Wagner, New York City (Sharon Katz, Helaine Hausner, Davis Polk & Wardwell, New York City, Frank Cummings, LeBoeuf, Lamb, Leiby & MacRae, Washington, D.C., Michael J. Crames, Levin & Weintraub & Crames, New York City, of counsel) for plaintiffs-appellants, cross-appellees, LTV Corp., et al.
 Roy Babitt, New York City (Susan G. Papano, Eric W. Sleeper, Anderson Russell Kill & Olick, P.C., New York City, Falkenberry, Whatley & Heidt, Birmingham, Ala., of counsel) for defendants-appellees, cross-appellants George Farragher, et al.
 Thomas J. Moloney, New York City (Cleary, Gottlieb, Steen & Hamilton, New York City, Gary M. Ford, Gen. Counsel, Pension Benefit Guaranty Corp., Washington, D.C., of counsel), for appellee Pension Benefit Guaranty Corp.
 Babette Ceccotti, New York City (Bruce H. Simon, Richard M. Seltzer, Cohen, Weiss and Simon, New York City, of counsel), for appellee United Steelworkers of America.
 R.A. King, Pittsburgh, Pa. (Kenneth R. Bruce, Buchanan Ingersoll, P.C., Pittsburgh, Pa., Stuart Cotton, Mound Cotton & Wollan, New York City, of counsel), for defendants-appellees David H. Miller and William W. Shaffer.
 Before LUMBARD and MINER, Circuit Judges, KAUFMAN,* District Judge.
 MINER, Circuit Judge:
 
 
 1
 Appellants The LTV Corporation, et al. ("LTV" or "debtors") and George Farragher, et al. ("Farragher") appeal from an order entered in the United States District Court for the Southern District of New York (Daronco, J.), 76 B.R. 945 (S.D.N.Y.1987), vacating and remanding an order entered by the Bankruptcy Court for the Southern District of New York. The bankruptcy court order enjoined, for a one-year period, all actions with respect to pension plans and other employee benefits plans administered by LTV and continued a previous injunction restraining all suits against present or former LTV employees who may be indemnified by LTV. On appeal, the district court vacated the order in part and remanded the matter to the bankruptcy court for entry of injunctive relief consistent with its opinion.
 
 
 2
 Because we conclude that we lack jurisdiction over this action, we dismiss the appeals.
 
 BACKGROUND
 
 3
 LTV and most of its subsidiaries filed Chapter 11 petitions on July 17, 1986 in the Bankruptcy Court for the Southern District of New York. LTV, directly and through various subsidiaries, administers some 30 defined benefit pension plans funded by annual contributions from LTV, including the Jones & Lauglin and Republic Steel pension plans. One of the primary reasons for the filing of the Chapter 11 petitions was LTV's inability to fund the pension plans.
 
 
 4
 Appellee Pension Benefit Guaranty Corporation ("PBGC") administers the pension plan termination insurance program of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. Secs. 1301-1461. Under that program, when a pension plan covered by Title IV of ERISA terminates without sufficient amounts to pay benefits guaranteed under Title IV, PBGC becomes a statutory trustee and makes up any deficiency in plan assets from its own funds. 29 U.S.C. Secs. 1322, 1342, 1361. PBGC may then enforce the employer's liability for unpaid contributions under a statutory formula. 29 U.S.C. Sec. 1362.
 
 
 5
 On September 30, 1986, PBGC obtained a consent order terminating one of LTV's pension plans. On January 13, 1987, PBGC terminated three more LTV pension plans pursuant to consent orders. See Jones & Laughlin Hourly Pension Plan v. LTV Corp., 824 F.2d 197 (2d Cir.1987). The present value of LTV's unfunded termination liability concerning these pension plans exceeds $2 billion. Therefore, because of the ERISA enforcement provisions, PBGC is LTV's largest creditor.
 
 
 6
 In April 1986, appellee United Steelworkers of America ("USWA"), on behalf of present and former hourly employees, sued LTV in the Northern District of Alabama, alleging breach of contract with respect to employee pension and welfare plans that were established pursuant to a collective bargaining agreement between LTV and USWA. This suit was automatically stayed, pursuant to 11 U.S.C. Sec. 362(a), when LTV filed its Chapter 11 petition.
 
 
 7
 On October 15, 1986, LTV obtained an injunction (the "Employee Litigation Order") from the United States Bankruptcy Court for the Southern District of New York in an unrelated adversarial proceeding, restraining all persons and entities from commencing or continuing any action against any present or former LTV employees who may be indemnified by LTV.
 
 
 8
 On November 13, 1986, appellee Farragher brought an action in the Northern District of Alabama on behalf of former salaried employees of Republic Steel Corporation, an LTV subsidiary, against 30 past and present LTV officers, directors, and employees as individuals and as fiduciaries of the Republic Steel Pension Plan, alleging ERISA, RICO and state fraud claims. On November 17, 1986, appellees Miller and Shaffer brought an action in the Western District of Pennsylvania on behalf of participating salaried employees against the Jones & Lauglin Retirement Plan, whose sponsors include LTV, to enjoin the termination of that plan under ERISA.
 
 
 9
 On December 4, 1986, LTV commenced this action in the United States Bankruptcy Court for the Southern District of New York, seeking an injunction staying the commencement or continuation by any party of law suits relating to LTV's pension plans. LTV named Farragher, Miller and Shaffer as defendants. The USWA and PBGC were not named as defendants, but were served with LTV's moving papers. On January 15, 1987, PBGC moved to modify the Employee Litigation Order to permit ERISA enforcement actions against LTV.
 
 
 10
 On February 26, 1987, the bankruptcy court issued an order enjoining the commencement or continuation of any action concerning any employee pension or benefit plan until January 23, 1988, at which time the court would reconsider the necessity of the order. In addition, the bankruptcy court continued the Employee Litigation Order.
 
 
 11
 On appeal, the district court found that the evidence submitted by LTV "thus far" concerning the impact of litigation on LTV's reorganization was insufficient to support a finding of imminent irreparable harm to LTV. With respect to potential harm posed by LTV indemnity provisions, the district court held that, for the time being, whether certain former and present LTV employees were entitled to indemnity was speculative, although it could envision circumstances in which indemnification might threaten LTV's reorganization in the future. The district court, however, upheld the bankruptcy court's order to the extent that it enjoined the fiduciary claim of the Farragher suit from going forward, because LTV would be bound, under the doctrine of collateral estoppel, by a determination that its co-fiduciaries had breached their fiduciary obligations with respect to the pension plans. In all other respects, the pending actions were allowed to continue. The district court vacated the bankruptcy court order and remanded the action for entry of a new order consistent with the district court's opinion.
 
 DISCUSSION
 
 12
 Although none of the parties raised the issue of our authority to decide this appeal, we are duty bound to examine this issue sua sponte.[2] In re Martinez, 721 F.2d 262, 264 (9th Cir.1983). For the reasons that follow, we conclude that we are without jurisdiction and consequently do not reach the merits of appellants' claims.
 
 
 13
 Our authority to hear appeals from the district courts in bankruptcy matters is conferred by the provisions of 28 U.S.C. Sec. 158(d). See In re Teleport Oil Co., 759 F.2d 1376, 1378 (9th Cir.1985). According to its terms, section 158(d) limits that authority to "all final decisions, judgments, orders, and decrees" entered in the district courts in bankruptcy cases (emphasis supplied). While we have acknowledged that a flexible approach to finality may apply to bankruptcy proceedings, "even that flexibility is limited by the requirement that there be a final decision on the discrete issue at bar." In re Stable Mews Associates, 778 F.2d 121, 122 (2d Cir.1985) (citation omitted). Where the district court's decision is to vacate a bankruptcy court's order and remand the action to the bankruptcy court, that decision "is not itself final if [it] remands the case to the bankruptcy judge for significant further proceedings." In re Commercial Contractors, Inc., 771 F.2d 1373, 1375 (10th Cir.1985) (quoting Matter of Riggsby, 745 F.2d 1153, 1155 (7th Cir.1984)). It makes little sense to accord the district court decision finality, even under the "flexible" approach in bankruptcy proceedings, where the district court decision envisions further proceedings in the bankruptcy court to determine the rights of the parties. As the court in Riggsby reasoned, if a district judge remands a case for further proceedings, and the remand order is appealable, an appeal would delay the bankruptcy court proceedings; if the proceedings envisioned by the district court's remand are allowed to go forward without the interruption of an appeal to this court, then, depending on the outcome, no further appeals may be necessary. 745 F.2d at 1155-56.
 
 
 14
 Here, the district court's opinion is replete with expressions of non-finality, contemplates significant further proceedings in the bankruptcy court, and anticipates modification of injunctive relief upon the presentation of appropriate additional evidence to the bankruptcy court. Responding to LTV's contention that the Farragher, Miller and Shaffer, and USWA suits will irreparably harm the reorganization, the district court held that LTV "must submit more than conclusory proof that lawsuits against management will divert management's time and resources away from [the LTV] reorganization," and that "[t]he evidence thus far presented seems to fall short of the necessary burden," 76 B.R. at 949. The district court's decision anticipates that LTV will introduce further evidence to prove the diversion of management time and resources away from the LTV reorganization.
 
 
 15
 In discussing the effect of LTV indemnity provisions on LTV's reorganization, the district court asserted that it could "envision circumstances in which indemnification may threaten the debtor's bonafide and demonstrated efforts to reorganize," but found that "[t]hat point has not yet been reached in this record." Id. at 950. The clear import of this language is that the record is open for the presentation of additional evidence to the bankruptcy court.
 
 
 16
 Even the district court's decision to uphold the injunction against the fiduciary claim in the Farragher suit is not a final decision, for the district court stated that "until the Farragher defendants wearing two hats remove one of the hats, their acts render the co-fiduciary debtor liable for contribution through Section 1105(a)," id. at 951. The district court appears to contemplate a change in injunctive relief in the event that a Farragher defendant doffs one hat.
 
 
 17
 In light of these expressions of non-finality and the fact that review of additional evidence presents the bankruptcy court with significant further proceedings, we conclude that the district court decision is not a "final decision on the discrete issue[s] at bar."
 
 
 18
 The parties, with the exception of Miller and Shaffer, argue that even if the district court opinion is not final, we have jurisdiction over the appeals if the bankruptcy court order is itself final. This argument not only contradicts the section 158(d) requirement of finality in the district court, but also encourages piecemeal adjudication, which Congress apparently wished to avoid. Commercial Contractors, 771 F.2d at 1375. Moreover, we are not so certain that the underlying bankruptcy court order is final, since by its terms the injunctive relief granted by the bankruptcy court extends only until January 23, 1988.
 
 
 19
 Nor are we persuaded by the argument proffered by LTV and Farragher that sections 1291 and 1292 of Title 28 (allowing appeals from district court final decisions and certain interlocutory orders, 28 U.S.C. Secs. 1291, 1292) provide jurisdiction in this case. The order that is the subject of this appeal is not final as required by section 1291, and, while we have recognized the applicability of section 1292 to determinations made by a district court sitting in bankruptcy, see In re Feit & Drexler, Inc., 760 F.2d 406, 411-13 (2d Cir.1985), we believe that section 158(d) remains the exclusive basis for jurisdiction for decisions entered under paragraphs (a) and (c) of section 158. Here, there is no dispute that the district court entertained this action on appeal under section 158(a). Therefore, our finding that the district court's decision was not final requires us to conclude that we have no authority to hear this action under section 158(d).
 
 CONCLUSION
 
 20
 The appeals are dismissed for lack of jurisdiction.
 
 
 
 *
 Frank A. Kaufman, District Judge, United States District Court for the District of Maryland, sitting by designation
 
 
 [2]
 This Court raised the question of jurisdiction at oral argument, and requested the parties before us to submit supplemental briefs on the issue of appealability